**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICKEL DRILLING PARTNERS, by GUY MICKEL, ROBIN ZINK, and KYLE J. MICKEL; DAVID ZINK and SARAH MICKEL, his wife; THE ESTATE OF EARL E. MICKEL, by E. JANENE MICKEL, EXECUTRIX, and KYLE J. MICKEL and SARAH ELIZABETH MICKEL,<br><br>    Plaintiffs,<br><br>            v.<br><br>CABOT OIL & GAS CORPORATION,<br><br>    Defendant. | CIVIL ACTION NO. 3:CV-11-0061<br><br>(JUDGE CAPUTO) |

**MEMORANDUM**

Presently before the Court is the Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 25) filed by Defendant Cabot Oil & Gas Corporation ("Cabot"). Plaintiffs[1] initiated this action in December 2010 alleging Cabot breached the terms of an oil and gas lease executed on October 8, 2008. Eighteen months later, in May 2012, Plaintiffs were granted leave to amend their complaint to "further set forth the facts of the subject lease signing." The Amended Complaint alleges that Cabot breached the terms of a different version of the oil and gas lease- one that was executed on August 8, 2008. Cabot has now moved to dismiss the Amended Complaint. In support of its motion to dismiss, Cabot asserts that Plaintiffs have improperly renounced the October 2008 Lease despite having represented to the Court for over eighteen months that this contract governed the instant dispute. Cabot therefore contends that Plaintiffs are now seeking to rely on a draft lease in support of their

---

[1]    Plaintiffs in this action are "E. Jamie Mickel; Guy Mickel; Robin R. Zink and Kyle J. Mickel; David Zink and Robert Zink; and Kyle J. Mickel and Sarah Mickel, his wife, adult individuals and partners under a Partnership Agreement . . . trading as Mickel Drilling Partners." (*Am. Compl.*, ¶ 1.)

breach of contract claim. In opposition, Plaintiffs argue that whether the August 2008 Lease was only a draft lease is an issue that cannot be resolved on a motion to dismiss. Essentially, Plaintiffs' position is that the Court must accept as true the allegation that the August 2008 Lease is the governing document to this action despite its prior filings that the parties' contractual relationship was controlled by the October 2008 Lease. I disagree. Because Plaintiffs represented in their Original Complaint and in multiple subsequent filings for approximately eighteen months after the action was commenced that the October 2008 Lease was the operative document in this breach of contract action, I accept as true the allegation that this breach of contract dispute is governed by the terms of the October 2008 Lease. And, because Plaintiffs fail to state a breach of contract claim under the October 2008 Lease, Cabot's motion to dismiss will be granted.

## I. Background

Plaintiffs commenced this action against Cabot on or about December 3, 2010 in the Court of Common Pleas of Wayne County, Pennsylvania. (Doc. 1, ¶ 1.) Cabot subsequently removed the action to this Court on January 10, 2011. (Doc. 1.) The Original Complaint alleged that on August 8, 2008, Plaintiff Estate of Earl E. Mickel entered into a Gas Lease with Cabot. (*Compl.*, ¶ 4.) Attached to the Original Complaint as Exhibit "A" is a copy of the Gas Lease executed on October 8, 2008 (the "October 2008 Lease"). (*Id*. at Ex. A.) Cabot accepted, agreed, and acknowledged the October 2008 Lease by letter on November 5, 2008. (*Id*. at Ex. B.) The Original Complaint averred that Cabot agreed to pay Plaintiffs a sum of $95,925.00 as bonus consideration pursuant to an overall area lease arrangement with Plaintiffs. (*Id*. at ¶ 5.) The parties' agreement further provided that "[s]ubject to Cabot Oil & Gas Corporation's approval of title, Cabot Oil & Gas will pay, within 60 days receipt of the subject Oil and Gas Lease, properly executed, the sum of $95,925.00 Dollars, which represents the bonus consideration . . . ." (*Id*. at Ex. C.) Despite demand by

Plaintiffs, however, Cabot refused to pay the $95,925.00 after sixty days as agreed upon by the parties. (*Id*. at ¶ 5.)

On January 17, 2012, a Joint Case Management Plan was submitted by the parties. (Doc. 9.)  Plaintiffs identified the principal issues in this action as follows:

> On August 8, 2008, Plaintiff, the Estate of Earl E. Mickel, entered into a Gas Lease with Defendant, copy of which was attached to Complaint as Exhibit "A," [the October 2008 Lease], as accepted, agreed, and acknowledged by letter on November 5, 2008, attached to the [Original] Complaint as Exhibit "B."
>
> Pursuant to said lease, Defendant further agreed to pay Plaintiff a sum of $95,925.00 Dollars which represented the bonus consideration for said Oil and Gas Lease in Texas Township, County of Wayne, Pennsylvania pursuant to an overall lease arrangement with the Plaintiffs and related parties, Defendant paid all other related leases adjoining said acreage as set forth in Exhibit "D" of the [Original] Complaint.
>
> Despite demand, Defendant failed to pay Plaintiffs the aforesaid sum of $95,925.00 Dollars after sixty (60) days as agreed.

(*Id*. at 1-2.)

On May 2, 2012, Plaintiffs filed a Motion to Amend the Complaint. (Doc. 16.) Plaintiffs, with the concurrence of Cabot, sought "to file the attached Amended Complaint to include all partners and further set forth facts of the subject lease signing." (*Id*.)  The next day, on May 3, 2012, Plaintiffs' Motion to Amend the Complaint was granted. (Doc. 17.)

The Amended Complaint was filed on May 4, 2012. (Doc. 18.)  As alleged in the Amended Complaint, on Friday, August 8, 2008, Plaintiff E. Janene Mickel, as Executrix of the Estate of Earl E. Mickel, properly executed an Oil and Gas Lease with Cabot. (*Am. Compl.*, ¶ 5, Ex. G.)  The lease attached as the controlling contractual agreement to the Amended Complaint, however, is not the October 2008 Lease, but rather an Oil and Gas Lease executed on August 8, 2008 (the "August 2008 Lease"). (*Id*. at Ex. G.) The Amended Complaint also alleges that Cabot's representative took the lease after it was signed and notarized and at least five other Oil and Gas leases were also signed and notarized at the same time, date, and place. (*Id*. at ¶ 5.)

3

The Amended Complaint further avers that Plaintiff E. Janene Mickel executed on August 8, 2008 two acknowledgments for intended payment. (*Id*. at ¶ 6.) One of the acknowledgments was signed by all partners for Mickel Drilling Partners and the other was signed on behalf of the Estate of Earl E. Mickel. (*Id*. at Exs. C, D.) Both acknowledgments were signed by Cabot's representatives on the same date and provided that "subject to Cabot Oil & Gas Corporation's approval of title, Cabot Oil & Gas will pay, within sixty days receipt of the subject Oil and Gas Lease, properly executed, [the sum owed]." (*Id*.) As such, Plaintiffs allege that Cabot "had a properly executed lease in its possession through October 8, 2008, i.e., the sixty day 'waiting' period set forth" in the acknowledgments. (*Id*. at ¶ 7.)

Under the terms of the August 2008 Lease, Cabot agreed to pay Plaintiffs a sum of $95,925.00 as bonus consideration for the Lease "pursuant to an overall area lease arrangements with the Plaintiffs and related parties." (*Id*. at ¶ 8.) However, Cabot:

> despite having receipt of the properly executed lease, Exhibit 'G' [the August 2008 Lease], then required resignature [sic] of *the same Lease with same Addendums*, then executed by E. Janene Mickel as 'Personal Representative' of the Estate of Earl E. Mickel, all still dated August 8, 2008, with alleged notary date of October 8, 2008, copy of the same attached as Exhibit 'A.'

(*Id*. at ¶ 9 (emphasis added).) Despite a demand for payment, Cabot refused to pay Plaintiffs the $ 95,925.00 bonus consideration after the sixty day waiting period expired. (*Id*. at ¶ 10.)[2] The August 2008 and October 2008 Leases do not contain the same addendums,

---

[2] Plaintiffs do not allege when Cabot terminated the lease agreement or when a demand for payment was made. Along with its motion to dismiss, however, Cabot attached a letter to Plaintiffs, dated November 11, 2008, terminating negotiations to acquire the lease and revoking and rescinding any previous offers from Cabot. (Doc. 26, Ex. 3.) Although not attached to the Amended Complaint, the termination letter is properly considered by the Court on this motion to dismiss because it is well-settled in the Third Circuit that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Plaintiffs confirmed that the termination of the lease occurred on

however, despite the representations of Plaintiffs to the contrary. Rather, the October 2008 Lease contains additional terms not present in the August 2008 Lease. (*Compare* August 2008 Lease *with* October 2008 Lease.) For example, paragraph 32 provides that "[a]ll bonus, rental, shut-in, storage and royalty payments due are to be directed to Mickel Drilling Partners . . . . " (*Id.*) The August 2008 Lease does not contain this provision. (*Id.*)

As a result of Plaintiffs' shift in position as to which version of the lease is the operative document in this breach of contract action, Cabot filed the instant Motion to Dismiss Plaintiffs' Amended Complaint on June 29, 2012. (Doc. 25.) In support of its motion to dismiss, Cabot contends that the Amended Complaint fails to state a breach of contract claim. Specifically, Cabot argues that Plaintiffs have not alleged the existence of a contract because the August 2008 Lease was simply a draft of the parties' final agreement. (Doc. 26, 11-13.) And, as Cabot properly exercised its surrender rights within sixty days of the final agreement, which Cabot asserts is the October 2008 Lease, it contends that the breach of contract claim should be dismissed with prejudice. In opposition to the motion to dismiss, Plaintiffs argue that:

> Plaintiffs alleged in Paragraph 9 of the Amended Complaint that the lease signed on 10/08/2008 was the same lease re-signed with the same Addendum and both were dated and effective 08/08/2008. Defendant counters that the initial lease was materially different and therefore, a 'draft.' This dispute is a clear question of fact that cannot be determined by this Motion. The Motion to Dismiss must be denied.

(Doc. 31, 6.) Additionally, Plaintiffs argue that the August 2008 Lease, viewed in the light most favorable to Plaintiffs on this motion to dismiss, should be considered "a final document since it is mutually signed, notarized, and receipted." (*Id.*)

Alternatively, Cabot argues that dismissal of the Amended Complaint is warranted in this action because Plaintiffs failed to join all members of the Mickel Drilling Partnership

---

November 11, 2008 in their brief in opposition to the motion to dismiss. (Doc. 31, 7.)

as Plaintiffs in this action. (Doc. 26, 15.)  In particular, Cabot notes that Donald Zink is not named as a plaintiff in this action. (*Id*. at 16.)  And, since Plaintiffs have had ample opportunity to properly name all Plaintiffs in this action, Cabot requests that the Amended Complaint be dismissed with prejudice. (*Id*.)  Plaintiffs attribute this to a "typographical error in transcription," and request that the caption and first paragraph of the Amended Complaint be amended by order. (Doc. 31, 3.)  As Cabot's motion has now been fully briefed, it is ripe for disposition.

## II. Discussion

**A.     Legal Standard for a 12(b)(6) Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will ultimately prevail. *See id*.  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).  The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555.  However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*,

6

578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, - - - F.3d - - - , 2012 WL 4335958, at *8 (3d Cir. Sept. 24, 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1949**.**

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are

based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**B.      Which Version of the Oil and Gas Lease Controls this Action?**

The threshold issue in resolving the instant motion to dismiss is whether the August 2008 Lease is the controlling document for Plaintiffs' breach of contract claim. While not specifically articulated as such, Plaintiffs' position is essentially that the parties' competing theories as to which version of the Oil and Gas Lease controls the breach of contract claim is not properly determined by a court on a motion to dismiss. Stated differently, Plaintiffs claim that, on a motion to dismiss, Cabot cannot argue that the August 2008 Lease was a draft, and that the Court must accept as true Plaintiffs' allegations in the Amended Complaint that the August 2008 Lease is the final signed agreement. While Plaintiffs' premise is generally correct, and the Court must ordinarily accept as true the plaintiff's allegations in deciding a motion to dismiss, the instant matter presents a different issue: whether, on a Rule 12(b)(6) motion, the Court must accept as true allegations in Plaintiffs' Amended Complaint that directly contradict their representations in the Original Complaint. Thus, in the present matter, Cabot's position is that the Court should accept as true Plaintiffs' representation that the October 2008 Lease is the operative document in this action pursuant to the allegations set forth in the Original Complaint filed in the Wayne County Court of Common Please in December 2010.

Multiple district courts in the Second Circuit have addressed the issue of whether a court must accept as true allegations in an amended complaint that contradict a previously

filed pleading. *See, e.g., Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, No. 08-CV-588, 2012 WL 1638326 (S.D.N.Y. May 8, 2012); *Palm Beach Strategic Income, LP v. Salzman*, No. 10-CV-261, 2011 WL 1655575 (E.D.N.Y. May 2, 2011); *In re Parmalat Sec. Litig.*, 421 F. Supp. 2d 703 (S.D.N.Y. 2006). Although some Second Circuit district courts have considered prior inconsistent pleadings relevant, but only as "controvertible, not conclusive" admissions, *see e.g., In re Parmalat*, 421 F. Supp. 2d at 713; *Zitz v. Pereira*, 119 F. Supp. 2d 133, 140 (E.D.N.Y. 1999), other courts "have disagreed, holding that a district court has no obligation to accept as true an amended complaint's allegations, if they 'directly contradict those facts set forth in the original complaint.'" *Palm Beach*, 2011 WL 1655575, at *5 (citing *Wallace v. New York City Dep't of Corrections*, No. 95-CV-4404, 1996 WL 586797, at *2 (E.D.N.Y. 1996); *Colliton v. Cravath, Swaine & Moore, LLP*, 2008 WL 4386764, at *6 (S.D.N.Y. 2008); *Gause v. Chase Home Finance LLC*, No. 09-CV-4886, 2010 WL 843945, at *2 (E.D.N.Y. Mar. 9, 2010)); *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1325-26 (Fed. Cir. 1998) (district court "was not required to accept as true inconsistent allegations in the second amended complaint"). Other district courts in the Second Circuit have taken a middle ground, noting that courts should typically disregard prior contradictory pleadings, but that there may be rare cases requiring departure from this rule. *See, e.g., Palm Beach*, 2011 WL 1655575, at *6; *Barris v. Hamilton*, No. 96-CV-9541, 1999 WL 311813, at *2 (S.D.N.Y. May 17, 1999).

In *Palm Beach*, Judge Seybert of the United States District Court for the Eastern District of New York found the action to be the "rare occasion" where the court could not disregard the plaintiff's prior inconsistent pleadings in resolving the defendants' motion to dismiss the amended complaint. *See Palm Beach*, 2011 WL 1655575, at *5-*6. In the plaintiff's initial complaint, originally filed in the Southern District of Florida claiming breach of an escrow agreement, the plaintiff attached a version of the escrow agreement identified

9

by Judge Seybert as the PBSI May Agreement. *See id*. at *1. After the action was transferred to the Eastern District of New York, the plaintiff filed an amended complaint attaching a different version of the escrow agreement, the PBCM May Agreement, which did not name the plaintiff as the escrow provider or even as a party to the agreement, in support of its breach of contract claim. *See id*. During the course of the litigation, the plaintiff subsequently filed a second and third amended complaint both identifying the PBCM May Agreement as the operative escrow agreement. *See id*. at *2. After dismissing the third amended complaint, the court permitted the plaintiff one final opportunity to cure the defects in its pleading. *See id*. at *3. The fourth amended complaint did not cure the defects identified by the court, but, instead, "alleged breach of an entirely different underlying contract- the PBSI May Agreement- attached to the original . . . complaint." *Id*. at *4.

After the defendants moved to dismiss the fourth amended complaint, the plaintiff argued that the court should ignore its pleadings in previous complaints and consider only the allegations that the breach of contract claim was governed by the PBSI May Agreement. *See id*. at *5. Judge Seybert refused to disregard the plaintiff's prior inconsistent pleadings because: (1) the plaintiff relied on its contractual theory that the operative agreement was the PBCM May Agreement for over two years; (2) the plaintiff initially presented the position that the PBCM May Agreement was the controlling document; (3) the plaintiff failed to even attempt to explain its behavior; (4) even if it tried, the plaintiff could not plausibly claim it learned about the PBSI May Agreement through subsequent discovery and/or factual investigation; (5) the plaintiff was represented by counsel and was not entitled to any special leniency in its pleadings; and (6) the plaintiff's resurrection of the PBSI May Agreement was part of a continuing pattern of "bewildering action" in the litigation. *Id*. at *6. Thus, under those circumstances, Judge Seybert found that she could not "plausibily accept as true that

the PBSI May Agreement governed the escrow transaction," and she concluded that the "PBCM May Agreement controlled the parties' relationship." *Id*. at *7.

I agree with Judge Seybert's reasoning that "in a typical case, a prior inconsistent pleading should not trump the Court's obligation under Rule 12(b)(6) to accept a complaint's allegations as true." *Id*. at *6. Often, there will be good reason why a pleading would be amended in a contradictory fashion- based on newly acquired information through discovery or the party's own investigation that alters the party's understanding of the case. As with *Palm Beach*, however, this is not a typical case for numerous reasons.[3]

First, Plaintiffs did not change their theory as to the operative contractual document shortly after commencing this action. Rather, Plaintiffs waited until May 2, 2012, almost eighteen months after this action was filed, to assert that the relevant document to the breach of contract claim is the August 2008 version of the Oil and Gas Lease.

Second, Plaintiffs do not attempt to explain this change in legal theory in opposition to Defendant's motion to dismiss. Tellingly, there are no facts plead to explain why, after almost eighteen months of litigation, Plaintiffs reached the conclusion that this action is governed by a different version of the Oil and Gas Lease.

Third, even if they attempted, Plaintiffs could not credibly claim that they only recently learned about the August 2008 Lease through discovery and/or factual investigation. Indeed, Plaintiffs' Amended Complaint indicates that they knew of this lease version as of August 8, 2008.

Fourth, Plaintiffs are, and have been since the inception of this litigation, represented

---

[3] Although *Palm Beach* involved multiple amendments to the original complaint and the instant action involves only a single amended complaint, the core fact is the same in both cases- a plaintiff relying on one version of a contract as the basis for the breach of contract claim for over a year of litigation and then suddenly, without explanation, asserting that the contract claim is controlled by a different agreement.

11

by counsel. Thus, their pleadings are not entitled to any special leniency afforded to *pro se* litigants.

Fifth, Plaintiffs have indicated on three separate occasions- the Original Complaint, the Disclosure Report on March 3, 2011 (Doc. 6), and the Joint Case Management Plan on January 17, 2012 (Doc. 9)- that the operative document in this action is the October 2008 Lease.

And finally, Plaintiffs' lack of candor as to the contents of the August and October 2008 Leases renders it implausible to accept as true Plaintiffs' representations that the operative document in this action is the August 2008 Lease. As noted, the Amended Complaint alleges that "Defendant, despite having receipt of the properly executed lease, [the August 2008 Lease], then required resignature [sic] of the same Lease with same Addendums . . . ." (*Am. Compl.*, ¶ 9.) Cabot, however, in its brief in support of its motion to dismiss, noted in bold font on four different occasions that the August and October versions were not, in fact, the same lease with the same addendums. Nevertheless, Plaintiffs continued to ignore these differences in opposition to the motion to dismiss by representing that "the lease signed on 10/08/2008 was the same lease re-signed with the same Addendum and both were dated and effective 08/08/2008." (Doc. 31, 6 (emphasis in original).) Notwithstanding Plaintiffs' representations to the contrary, the August and October versions of the Oil and Gas Lease do not contain identical terms, and, by definition, cannot be deemed as the "same Lease with the same Addendums." Indeed, while the addendums to the August 2008 Lease make no reference to Mickel Drilling Partners, the October 2008 Lease specifically provides that "[a]ll bonus, rental, shut-in, storage, and royalty payments due are to be directed to Mickel Drilling Partners." (*Am. Compl.*, Ex. A, ¶ 32.) Based on this provision alone, it is apparent that Plaintiffs' representation that the

August and October 2008 Leases are identical is untenable.[4]

Under these circumstances, I cannot plausibly accept as true that the August 2008 Lease governed the parties' contractual arrangement.  Rather, as Plaintiffs represented in filings to this Court for over eighteen months, I accept as true that the October 2008 Lease controlled the parties' relationship.[5]

**C.    Plaintiffs Fail to State a Breach of Contract Claim**

To state a breach of contract claim under Pennsylvania law, Plaintiffs must plead "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999) (citing *Gen. State Auth. v. Coleman Cable & Wire Co.*, 385, 365 A.2d 1347, 1349 (Pa. Cmwlth. 1976)).  Cabot argues that Plaintiffs failed to sufficiently allege the existence of a contract because it properly terminated the October 2008 Lease within the permitted sixty day termination period. (Doc. 26, 12.)  I agree.

As previously noted, the August 8, 2008 acknowledgments provided that "subject to Cabot Oil & Gas Corporation's approval of title, Cabot Oil & Gas will pay, within sixty days receipt of the subject Oil and Gas Lease, properly executed, . . ." (*Am. Compl.*, Ex. C.)  Cabot, therefore, was not required to make the bonus payments within sixty days unless it

---

[4]  The two leases contain other readily apparent differences as well.  For example, the October 2008 Lease indicated that the leased land is located in Berlin Township, while the August 2008 Lease does not identify what township the subject property is located.  This change is initialed on the October 2008 Lease by JM.  Similarly, the October 2008 Lease identifies the subject property by deed dated 09/12/06, while the August 2008 Lease is silent as to the deed date.  Again, this change is initialed by JM.

[5]  Thus, Plaintiffs' argument that Defendant's position presents "a clear question of fact that cannot be determined by this Motion [to dismiss]," (Doc. 31, 6), is incorrect as I have accepted as true the allegations from Plaintiffs' Original Complaint that the October 2008 Lease governs the instant contractual dispute.

approved the title. Cabot did not approve the title and instead terminated the lease on November 11, 2008. (Doc. 26, Ex. 3; Doc. 31, 7.) As the operative lease agreement was executed on October 8, 2008, Cabot terminated the lease well within the sixty day period authorized by the parties' agreement.[6] As a result, Cabot was under no obligation to make the bonus payment and did not breach any contractual obligations by withholding payment.

The exhibits attached to Plaintiffs' Amended Complaint also confirm that the parties never reached a final agreement in light of Cabot's timely termination of the lease agreement. Attached to the Amended Complaint is a document entitled "Amendment to Partnership Agreement Mickel Drilling Partners." (*Am. Compl.*, Ex. E.) The amendment to the Partnership Agreement acknowledges that "negotiations with Cabot Oil and Gas Corporation regarding the lands of E. Jane Mickel failed to produce a signed Mineral Lease." (*Id.*)

"'It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.'" *Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty.*, No. 06-cv-1064, 2007 WL 1007968, at *5 (W.D. Pa. Mar. 30, 2007) (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir.1998)). Thus, "'[a] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.'" *Id.* (quoting *N. Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 455 ). Here, the amendment to the Partnership Agreement demonstrates that Plaintiffs are not entitled to relief in this action because they effectively admitted that they failed to reach a contractual

---

[6] The October 2008 Lease further provided that Cabot had "the right to surrender this lease or any part thereof for cancellation after which all payments and liabilities hereunder shall cease . . . and if the whole is surrendered then this lease shall become absolutely null and void." (*Am. Compl.*, Ex. A., ¶ 10.)

agreement with Cabot.[7] Accordingly, Plaintiffs have failed to adequately allege a breach of contract claim, and the Amended Complaint will be dismissed.[8]

### D. Plaintiffs' Request for Leave to Amend

Lastly, Plaintiffs' request to file a second amended complaint will be denied. Although leave to amend should be "freely" granted "when justice so requires," Fed. R. Civ. P. 15(a)(2), denying leave to amend is appropriate where amendment would be futile. *See, e.g., Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir.2000). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id*. (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). Here, as Cabot timely terminated the lease agreement and Plaintiffs acknowledged that negotiations failed to produce a signed lease, a second amended complaint would fail to cure the deficiencies in Plaintiffs' breach of contract claim. For this reason, granting leave to amend would be futile, so the Amended Complaint will be dismissed with prejudice.

### III. Conclusion

For the above stated reasons, Defendants' motion to dismiss Plaintiffs' Amended Complaint will be granted. And, because leave to amend their complaint would be futile,

---

[7] Plaintiffs claim that the amendment to the Partnership Agreement was only entered into based on the advice of an accountant for tax purposes. (Doc. 31, 3, 7.) However, under Pennsylvania law, where the intention of the parties to a partnership agreement is "clear and unequivocal from the contract, this intention governs and must be given effect." *Haymond v. Lundy*, 177 F. Supp. 2d 371, 378 (E.D. Pa. 2001) (citing *Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. 1993)). The Partnership Agreement is capable of only one reasonable interpretation- that negotiations with Cabot failed to produce a signed lease, and Plaintiffs' subjective expectations cannot alter that result. *See id*.

[8] Because I have determined that the Amended Complaint fails to state a breach of contract claim, I will not address Cabot's argument that Plaintiffs failed to join all members of the Mickel Drilling Partnership as required by the Federal Rules of Civil Procedure.

the Amended Complaint will be dismissed with prejudice.

    An appropriate order follows.

October 16, 2012                                           /s/ A. Richard Caputo  
Date                                                            A. Richard Caputo  
                                                                      United States District Judge